UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAKEEM SHEPARD #496273,

        Plaintiff,                                Hon. Hala Y. Jarbou

v.                                          Case No. 1:22-cv-326

FREDEANE ARTIS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 21) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **DENIED**.

### I.  Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility, has sued Defendants Fredeane Artis, Christopher King, and Paul Davis pursuant to 42 U.S.C. § 1983 based on events that occurred at Earnest C. Brooks Correctional Facility (LRF) while Plaintiff was housed there. Defendants Artis, King, and Davis are, respectively, the Warden, Deputy Warden, and Assistant Deputy Warden at LRF. Plaintiff alleges that Defendants were deliberately indifferent under the Eighth Amendment by failing to protect him from a serious risk of harm when they disregarded established COVID-19 protocols requiring social distancing and mandating that infected prisoners quarantine away from non-infected prisoners. Plaintiff alleges that, as a result of Defendants' deliberate indifference, he became infected with COVID-19 in February 2022. (ECF No. 1 at PageID.1–2.)

1

Defendants move for summary judgment on the basis that Plaintiff failed properly to exhaust his claims against them before filing this action. Although Defendants concede that Plaintiff filed two grievances regarding the COVID-19 issue he raises in this lawsuit, they contend that Plaintiff failed to fully exhaust his administrative remedies because he failed to appeal the Step I rejections through Step III of the grievance process, and he did not raise the issue at LRF's Warden's Forum meetings on March 16 or April 13, 2022, as the grievance coordinator had advised him to do. (ECF No. 22 at PageID.76–77.)

## II.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could

find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to

resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants submit a Step III Grievance Report showing that Plaintiff did not exhaust any grievance through Step III of the MDOC's grievance process during the relevant period. (ECF No. 22-4.) Defendants also submit as an exhibit two Step I grievances that Plaintiff filed on February 18, 2022, soon after he became infected with COVID-19. Those grievances were received by Grievance Coordinator T. Pipkins on February 2, 2024, who assigned them grievance identifiers LRF 2022-02-0306-27z (the 0306 Grievance) and LRF 2022-02-0313-27Z (the 0313 Grievance). (ECF No. 22-3 at PageID.95, 98.) The 0306 Grievance, which listed the incident date as November 2021, was rejected on February 24, 2022, because "Issues which

affects [sic] more than just one needs [sic] to be addressed in the Warden's Forum." (*Id.* at PageID.96.) The grievance coordinator attached to the rejection letter a form captioned "MDOC Notice to Prisoners Receiving a Grievance Rejection-Draft CSJ247RU." The form contained a heading "Reasons for Rejection," and the fifth and eighth reasons—the grievance was untimely, and the prisoner was grieving content of policy or procedure except as it was specifically applied to the grievant—were circled. (*Id.* at PageID.97.) The 0313 Grievance, which listed an incident date of February 14, 2022, was rejected the same date for the same reason: "Issues which affects [sic] more than just one needs [sic] to be addressed in the Warden's Forum." (*Id.* at Page.ID.98.) The same form was attached to the rejection letter, with rejection reason eight circled. (*Id.* at PageID.100.)

In his response, Plaintiff presents evidence that he filed two additional grievances, one on February 12, 2022, and the other on February 19, 2022, regarding Defendants' failures to enforce COVID-19 protocols to reduce the spread of the virus, but the grievance coordinator failed to acknowledge or process them. (ECF No. 26 at PageID.116; ECF Nos. 26-2, 26-2.) Plaintiff says that when he did not hear back from the grievance coordinator, he mailed letters to her on February 24, 2022, and March 1, 2022, inquiring about the status of his grievances. (ECF No. 26-1 at PageID.116; ECF Nos. 26-3, 26-5.) Plaintiff contends that the Court should conclude that he was not required to exhaust his claims through Step III because the grievance coordinator's failure to respond to his February 12 and 19, 2022 grievances rendered the grievance process unavailable. (ECF No. 26 at PageID.117.)

The grievance coordinator rejected the 0306 and 0313 Grievances because they raised issues that were applicable to numerous prisoners and not limited only to Plaintiff. The grievance coordinator did not cite in her rejection letter the policy provision that she applied, although she

circled the eighth reason for rejection under Paragraph J of the policy, that "[t]he prisoner is grieving <u>content</u> of the policy or procedure except as it was specifically applied to the grievant." (ECF No. 22-3 at PageID.97, 100.) However, this clearly was not the basis for the rejection, as Plaintiff was complaining about Defendants' failure to *follow* policy or procedure, not about the content of a policy or procedure. Rather, it appears that the rejection was based on paragraph F under General Information, which states: "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement *that personally affect the grievant . . . .*" (Italics added). Hence, Plaintiff's issue was non-grievable because it affected "more than just one." (ECF No. 22-3.)

Defendants' argument that Plaintiff failed to exhaust his claim because he did not pursue what they admit is a non-grievable issue through Step III ignores Sixth Circuit caselaw holding that a prisoner cannot be required to exhaust administrative remedies regarding non-grievable issues. *See Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006); *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) (holding that an inmate "cannot be required to exhaust administrative remedies regarding non-grievable issues"). "The non-grievability of [an issue] through the grievance process makes that remedy unavailable under the PLRA, and thus [the prisoner] does not have to pursue that remedy to exhaust his claim." *Owens*, 461 F.3d at 769 (citing *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999), and *Rancher v. Franklin Cnty.*, 122 F. App'x 240, 242 (6th Cir. 2005)). As another judge of this Court recently observed, "for the MDOC to instruct a prisoner that his claims fall outside of its grievance procedure and then assert that the claims are barred from litigation because the prisoner did not exhaust the same procedure belies logic." *Valdez v. Bray*, No. 2:21-cv-58, 2022 WL 3587883, at *4 (W.D. Mich. July 22, 2022), *report and*

*recommendation adopted*, 2022 WL 3586244 (W.D. Mich. Aug. 22, 2022). Accordingly, Plaintiff was not required to exhaust his non-grievable issue through the MDOC's grievance procedure.

As for Defendants' contention that Plaintiff failed to exhaust his administrative remedies by raising his concerns with the Warden's Forum, Defendants cite no provision in the grievance policy that imposed such a requirement on Plaintiff. The eighth reason the policy gives for rejecting grievances—those that grieve the "content of a policy or procedure"—states that a prisoner may direct comments to the Warden's Forum "[i]f a prisoner has a concern with the content of a policy or procedure," Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J(8), but as noted above, that provision does not apply in this case because Plaintiff was not grieving the content of policy or procedure.[1] This fact distinguishes Defendants' cited authority, *Ryan v. Michigan Department of Corrections.*, No. 19-12286, 2022 WL 1652305 (E.D. Mich. May 24, 2022), which concerned a prisoner's challenge to an MDOC policy specifying the model of a typewriter that an MDOC prisoner may possess. *Id.* As the Supreme Court noted in *Bock*, "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" 549 U.S. at 218. Nothing in the MDOC's policy required Plaintiff to raise his issue with the Warden's Forum as the proper procedure for exhausting his claim. Furthermore, Defendants cite no provision authorizing a grievance coordinator to impose her own exhaustion requirements on an *ad hoc* basis.[2] Therefore, this argument lacks merit.

---

[1] It is not even clear, and certainly no caselaw binding on this Court holds, that the Warden's Forum reference in Paragraph J(8) of the grievance policy amounts to an exhaustion requirement for a non-grievable issue.

[2] Even if Defendants could cite some provision of the grievance policy requiring Plaintiff to present his issue to the Warden's Forum, Plaintiff offers a declaration from prisoner Matthew Bentley, the unit representative for B unit at LRF, to establish his compliance. Bentley states that he raised the issue of failure to confine infected prisoners away from those who had tested negative at the February 25 and February 22, 2022 Warden's Forum meetings on behalf of Plaintiff. (ECF No. 26-6.) Defendants contend that Bentley's acts could not have exhausted Plaintiff's claim

**CONCLUSION**

For the foregoing reasons, I recommend that the Court **deny** Defendants' motion for summary judgment. (ECF No. 21.)

Dated: September 26, 2022                              /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

because these meetings occurred before Plaintiff was told to raise his issue at the Warden's Forum. But just as with the asserted Warden's Forum requirement itself, Defendants point to no provision in the policy requiring a prisoner to raise a non-grievable issue at a particular Warden's Forum session or within a certain time, as is the case with grievable issues under the policy.