UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAKEEM SHEPARD #496273,

        Plaintiff,                                         Hon. Hala Y. Jarbou

v.                                                         Case No. 1:22-cv-326

FREDEANE ARTIS, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Rakeem Shepard, a Michigan prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility, has sued Defendants Fredeane Artis, Christopher King, and Paul Davis pursuant to 42 U.S.C. § 1983, alleging that they violated his Eighth Amendment rights while he was incarcerated at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon, Michigan, by failing to respond adequately to the risks presented by COVID-19, specifically, by not quarantining two prisoners who had tested positive. Presently before me is Defendants' Motion for Summary Judgment. (ECF No. 49.) The motion is fully briefed and ready for decision.

    Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** and that Plaintiff's claims be **dismissed with prejudice**.

## I. Background

    In February 2022, Plaintiff was housed in the Baldwin unit of LRF. (ECF No. 50-2 at PageID.229.) On February 7, 2022, the entire housing unit was tested for COVID-19. (ECF No. 1 at PageID.4.) Although Plaintiff tested negative, two other prisoners in the unit tested positive.

Plaintiff alleges that instead of being immediately locked in their cells or otherwise quarantined, the positive prisoners were allowed to mingle with the other, negative, prisoners in the unit from 9:30 a.m. to 2:15 p.m. (*Id.*) No Defendant was present in the housing unit during this time. (ECF No. 50-2 at PageID.234.) The positive prisoners were allowed to roam free for some period of time but were eventually locked in their cells in the unit. Later, the two prisoners were taken out of the unit to be separately quarantined. Plaintiff tried to avoid the prisoners by remaining in his cell until they were moved from the unit. (*Id.* at PageID.241–43.)

One week later, on February 14, 2022, the entire Baldwin unit was again tested for COVID-19. This time Plaintiff tested positive. (*Id.* at PageID.236.) In total, 57 prisoners in the unit tested positive that day. (ECF No. 50-6.) After the results were announced, prisoners in the unit began complaining to housing staff and refused to return to their cells. Defendant Artis, who was then the Acting Warden of LRF, and Defendant King, who was then the Acting Deputy Warden of LRF, went to the Baldwin unit to quell the situation and restore order and safety. (ECF No. 50-2 at PageID.241; ECF No. 50-3 at PageID.251; ECF No. 50-4 at PageID.262.) Defendants Artis and King instructed the prisoners to return to their cells. Instead, the crowd of prisoners began "spitting facts and stuff to them at once," and asking why the two prisoners were not immediately locked down on February 7. (ECF No. 50-2 at PageID.241.) Defendants responded that what occurred or did not occur on February 7 did not matter at that point, and instructed the prisoners to return to their cells. Plaintiff did not speak directly with Defendants. Instead, he "chime[d] in" like the other prisoners. (*Id.*) The prisoners failed to comply with Defendant Artis's order and remained agitated. Therefore, Defendant Artis authorized a platoon of officers to enter the housing unit to secure it by locking the prisoners in their assigned cells. (*Id.* at PageID.241–42; ECF No. 50-3 at PageID.251; ECF No. 50-4 at PageID.262–63; ECF No. 50-6.) A few weeks later, the prisoners in

Baldwin unit sent Defendant Artis a letter apologizing for their behavior on February 14. The prisoners in the unit, including Plaintiff, individually signed the letter. (ECF No. 50-2 at PageID.243–44; ECF No. 50-3 at PageID.252, 254–58.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  Discussion

Defendants filed their motion for summary judgment and supporting brief on May 24, 2023. (ECF Nos. 49 and 50.) On June 22, 2023, Plaintiff filed an objection to Defendant's motion (ECF No. 52) and an objection to their brief. (ECF No. 53.) I construe both objections together as Plaintiff's response to the motion. Defendants contend that they are entitled to summary judgment on the grounds that they were not personally involved in the alleged violation, Plaintiff fails to present evidence that they were deliberately indifferent to a serious risk of harm, and they are entitled to qualified immunity.

### A. Lack of Personal Involvement

Defendants contend that Plaintiff's claims against them fail because he cannot show their personal involvement in the alleged violation—not quarantining the two infected prisoners. It is well established that a defendant cannot be held liable under Section 1983 absent a showing that they personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g., Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). "Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). In short, a "plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint." *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991); *see also Heyne v. Metropolitan Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (internal quotation marks omitted)). At the summary judgment stage, a plaintiff must present evidence of the defendant's involvement in the alleged constitutional deprivation. *Bennett v. Schroeder*, 99 F. App'x 707, 713 (6th Cir. 2004); *see also Lentz v. Anderson*, 888 F. Supp. 847, 850 (N.D. Ohio 1995) ("Because there is no evidence that Governor Voinovich, Department of Rehabilitation and Correction Director Wilkinson, OPI Director Anderson, and OPI Manager Mustard were personally involved in the prison's decision-making process which led to plaintiff's allegations of cruel and unusual punishment, they will be dismissed from any § 1983 liability.").

In his complaint, Plaintiff alleged that on February 7, after the two prisoners tested positive, some unidentified officers told him that they had orders from Defendants not to "top lock" or

quarantine these prisoners because they were the only two infected prisoners, and the risk was low. (ECF No. 1 at PageID.5.) Plaintiff also alleged that he spoke to Defendants Artis and King on February 14 about not quarantining the two prisoners, and they verified that they authorized the prisoners not to be quarantined on February 7. (*Id.* at PageID.5–6.)

Defendants assert that they were not involved in the decision whether to quarantine the infected prisoners. Defendants Artis and King both state in their declarations that identifying and quarantining prisoners who have tested positive for COVID-19 is the responsibility of healthcare personnel, and neither Defendant is a healthcare professional. (ECF No. 50-3 at PageID.251; ECF No. 50-4 at PageID.262.) Defendant Artis further states that neither she nor anyone on her staff ordered the corrections officers in Baldwin unit to not quarantine prisoners on February 7, 2022, or any other day. (ECF No. 50-3 at PageID.251.) Defendant King affirms this assertion in his declaration.[1] (ECF No. 50-4 at PageID.262.) In addition, Defendant King states that although his official assignment as Acting Deputy Warden of LRF began on February 6, 2022, he did not begin working at LRF until February 8, 2022, because prior to that date he was working at another facility due to staffing needs. (*Id.*) Defendants also note that Defendant Davis left work early on February 14, 2022, before the COVID-19 test results were ready. (ECF No. 50-5 at PageID.267.) Thus, he was not present in Baldwin unit with Defendants Artis and King that day.

Plaintiff fails to present any admissible evidence to create a genuine issue of material fact that Defendants had anything to do with any decision whether or not to quarantine infected prisoners at LRF, including the two prisoners who tested positive in Plaintiff's unit on February 7,

---

[1] Plaintiff argues that Defendant King's declaration is a "sham" affidavit, but fails to explain why he believes it is a "sham." (ECF No. 53 at PageID.344.) Having reviewed the declaration, I find nothing in its contents suggesting that it was not based on facts within Defendant King's personal knowledge or that it exhibits any indicia of a "sham."

5

2022. Although Plaintiff alleges in his complaint that unidentified corrections officers told him that Defendants had ordered them not to quarantine the two prisoners, and he verified his allegations under penalty of perjury pursuant to 28 U.S.C. § 1746, his statements about what the officers told him are inadmissible hearsay. *See Horacek v. Martin*, No. 2:15-cv-102, 2023 WL 333977, at *3 (W.D. Mich. Jan. 20, 2023) (holding that the plaintiff's statements in his affidavit pursuant to Section 1746 about what other prisoners told him regarding their religious diet requests constituted inadmissible hearsay).

As for Plaintiff's complaint allegations about speaking with Defendants Artis and King on February 14, 2022, in his deposition, Plaintiff admitted that he did not personally speak with either Defendant that day. Plaintiff said that he was just part of the group of prisoners "spitting facts" at Defendants Artis and King. Plaintiff further testified that, when prisoners pressed Defendants about why the two infected prisoners were not quarantined, Defendants said that it did not matter and told them to return to their cells. (ECF No. 50-2 at PageID.241–42.) Plaintiff did not assert that Defendants actually admitted that they ordered the positive prisoners not to be quarantined. (*Id.* at PageID.240–42.) And, as noted above, Defendant King has shown that he was not even present at LRF prior to February 8, 2022. Plaintiff offers no evidence to rebut this assertion.

Plaintiff's failure to present evidence of Defendants' personal involvement is fatal to his claim. To the extent he asserts that Defendants were personally involved in the alleged violation because they managed the day-to-day operations of the facility or because they were present at the prison on a daily basis, his claim must fail because he may not maintain a claim under 42 U.S.C. § 1983 on a respondeat superior theory. *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978). In other words, liability must be premised on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981). Plaintiff thus

fails to show that Defendants personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Leach*, 891 F.2d at 1246; *Hays*, 668 F.2d at 874.

### B. Eighth Amendment Violation

Apart from failing to demonstrate that Defendants were personally involved in the alleged violation, Plaintiff fails to establish that they were deliberately indifferent to his health or safety. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In the context of COVID-19, the Sixth Circuit has held that "the objective prong is easily satisfied." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020). Ordinary Eighth Amendment principles apply to the subjective prong: "[t]he key inquiry is whether [the defendant] 'responded reasonably to th[is] risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 844). A response may be reasonable

7

even if "the harm imposed by COVID-19 on inmates . . . 'ultimately [is] not averted.'" *Id.* at 841 (quoting *Farmer*, 511 U.S. at 844).

Here, Defendants concede that the objective prong is met. (ECF No. 50 at PageID.213.) Defendants contend, however, that they and the MDOC responded reasonably to COVID-19 through actions that were designed to limit the transmission of COVID-19 from staff to prisoners and among prisoners. For example, Defendant Artis notes that, as the Acting Warden of LRF, she was familiar with MDOC policies, protocols, and Director's Office Memoranda (DOM) relating to COVID-19, and LRF implemented various measures set forth in those sources to minimize the spread of COVID-19. (ECF No. 50-3 at PageID.250–51.) During the relevant time, DOM 2022-21R4 (ECF No. 50-7) was in effect until it was superseded by DOM 2022-21R5 (ECF No. 50-8) on February 9, 2022. Both DOMs specified, among other things: (1) that staff and prisoners were to wear approved masks or facial coverings at all times while indoors at MDOC facilities; (2) that Personal Protective Equipment (PPE) included N95 or other acceptable masks, gowns, eye protection, and powder-free nitrile gloves; (3) that social distancing recommendations were to be followed at all times, including in programing and classrooms, the chow line, staff screening, etc., and group meetings were to be limited to ten individuals and technology used in place of in-person interactions whenever possible; (4) close contacts and procedures for handling close contacts among staff and prisoners; (5) designation of isolation areas to quarantine COVID-19-positive prisoners, as soon as resources permitted, as well as isolation areas for those deemed close contacts and those under investigation for being a close contact; (6) that transfers and cell moves were prohibited in most circumstances, only when necessary, and with staff effecting such moves wearing required PPE; (7) testing of close contacts, regardless of vaccination status; and (8) screening of all individuals entering any MDOC facility.

8

In light of these measures, Plaintiff fails to show that Defendants were deliberately indifferent to his health or safety. Plaintiff's assertion that two COVID-19-positive prisoners were not properly quarantined for several hours on a single day does not show that Defendants did not act reasonably. As noted above, the relevant DOMs required that prisoners testing positive must be placed in quarantine in a designated isolation area "as soon as resources permit." (ECF No. 50-7 at PageID.284.) As Plaintiff acknowledged in his deposition testimony, although the two prisoners were allowed to roam around at first, they were later locked in their cells, and moved to an isolation unit to be quarantined about five hours later. (ECF No. 1 at PageID.4; ECF No. 50-2 at PageID.234–35.) Plaintiff also fails to present any evidence that isolation cells were immediately available at the time the two prisoners were confirmed positive. *See Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *3 (6th Cir. Oct. 14, 2021) (noting that the plaintiff's complaint was properly dismissed where, among other things, he failed to allege that the facility had enough physical space to implement social distancing but the defendants chose not to use that space). Even if the COVID-19 measures fell short on February 7, 2022, Plaintiff fails to present any admissible evidence rebutting Defendants' showing that they responded reasonably to the risks presented by COVID-19 by implementing the procedures set forth in the DOMs.

C.     **Qualified Immunity**

Defendants also contend that qualified immunity bars Plaintiff's claims. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established "that

9

every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

For the reasons set forth above, Plaintiff's claim fails at the first step of the qualified immunity analysis. His claim also fails on the second prong because he cannot show that Defendants violated clearly established law. The second prong focuses on the state of the law at the time the alleged violation occurred. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). It is not enough to show that the right is established at "'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft*, 563 U.S. at 742). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993 (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

"An official's conduct flunks this 'clearly established' test only if the conduct's unconstitutionality was 'beyond debate' when the official acted, such that any reasonable person would have known that it exceeded constitutional bounds." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021). To determine whether a right is clearly established, a district court within the Sixth Circuit may consider binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point. *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Risbridger v. Connelly*, 275 F.3 565, 569 (6th Cir. 2002)). Given the unique and "unprecedented" challenges that that the COVID-19 coronavirus posed to prison officials in the safe management of prison facilities, *see Ryan v. Nagy*, No. 2:20-cv-11528, 2021 WL 6750962 at *9 (E.D. Mich. Oct. 25, 2021), *report and recommendation adopted in part*, 2022 WL 260812 (E.D. Mich. Jan. 26, 2022), clarity on the law is particularly important.

Plaintiff fails to demonstrate that the law was so clear that a reasonable official in Defendants' position would have known that failure to immediately quarantine prisoners who tested positive for COVID-19 violates the Eighth Amendment, particularly given that other reasonable preventative measures had been implemented to stop or slow the spread of the disease. Plaintiff's citation to *Helling v. McKinney*, 509 U.S. 25 (1993), does not provide the requisite clarity. (ECF No. 53 at 357–58.) In *Helling*, the plaintiff prisoner had been assigned to a cell with another prisoner who smoked five packs of cigarettes a day. *Id.* at 28. Plaintiff does not allege that he was placed in a cell with the COVID-19 positive prisoners, or even that he was unable to avoid close contact with them after they were confirmed positive. In fact, Plaintiff testified that he remained in his cell to avoid exposure to the prisoners until they were taken out of the unit. (ECF

No. 50-2 at PageID.235–36.) *Helling* thus does not give clear guidance as to the lawfulness of the circumstances alleged in this action.[2]

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' Motion for Summary Judgment (ECF No. 49), and dismiss Plaintiff claims with prejudice.

Dated: August 29, 2023                                      /s/ Sally J. Berens
                                                                              SALLY J. BERENS
                                                                              U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[2] Although Plaintiff's objections are not easy to decipher, several arguments, which do not affect Defendants' entitlement to summary judgment, can be gleaned from those documents. First, Plaintiff asserts that Defendants did not seek concurrence in the motion as required by Local Civil Rule 7.1(d). This argument lacks merit because Defendants demonstrated that they sought concurrence, which Plaintiff denied. (ECF No. 49 at PageID.191; ECF No. 56-2 at PageID.394–95.) Next, Plaintiff's assertions that Defendants violated the Amended Case Management Order (ACMO) and filed their motion beyond the dispositive motion deadline lack merit. The ACMO expressly stated that "[e]ach party may file one motion for summary judgment no later than 28 days after the close of discovery," and noted that a motion for summary judgment limited to the issue of exhaustion would not count towards the one authorized summary judgment motion. (ECF No. 42 at PageID.178.) The motion was also timely, as motions for summary judgment were due by May 25, 2023, and Defendants filed their motion on May 24, 2023. (ECF No. 49.) Finally, Plaintiff's citation throughout his objection to his Complaint (ECF No. 1), the September 26, 2022 Report and Recommendation regarding Defendants' summary judgment motion on the basis of exhaustion (ECF No. 31), and the Court's December 19, 2022 Order approving and adopting the Report and Recommendation (ECF No. 40), have no bearing on the issues presented in Defendants' instant motion. The prior determinations that Plaintiff stated an Eighth Amendment claim and that Plaintiff did not fail to exhaust his administrative remedies are not determinative of whether Plaintiff has presented sufficient evidence to create a genuine issue of material fact to survive summary judgment on his Eighth Amendment claims.